IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DVISION

| | |
|---|---|
| SAMUEL MEIS and BOBETTE MEIS, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 2:23-cv-2251 |
| ) | |
| v. ) | |
| ) | JURY DEMAND |
| FIRST FINANCIAL BANK N.A., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

# COMPLAINT

1. This is an action for damages brought by two individual consumers, Samuel Meis and Bobette Meis, against First Financial Bank N.A. for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

## PRELIMINARY STATEMENT

2. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate and obsolete credit reporting.

3. Congress did not want consumers to be burdened with stale adverse information in their consumer reports. *See* S. Rep. No 91-517, at 1 (1969). For this reason, the FCRA requires consumer reporting agencies (CRAs) to exclude most adverse information that is older than seven years. 15 U.S.C. § 1681c(a). This mandate is further cemented by the FCRA's requirement that CRAs use reasonable procedures to ensure they do not include outdated adverse information in their reports. 15 U.S.C. § 1681e(a).

4. Under the FCRA, the date of commencement of the obsolescence period for a mortgage account is the date of the first delinquency on the account. In other words, with respect to the timeframe a CRA may report an adverse mortgage account, the seven-year time period under Section 1681c(a) begins on the date a consumer first misses a payment on his or her mortgage.

5. The FCRA requires that any person who furnishes information about a delinquent account must inform the CRA when the delinquency commenced. 15 U.S.C. § 1681s-2(a)(5)(A).

6. Regulatory guidance from the Federal Trade Commission further reinforces this requirement for furnishers to report the date of first delinquency:

> Furnishers of consumer information to CRAs must provide the month and year of the commencement of the delinquency that immediately preceded the placement for collection, charge to profit or loss, or similar action. They may not substitute an alternative, later date … The month and year of the commencement of the delinquency that immediately preceded the chargeoff is the month the first payment was missed, regardless of how long after the delinquency the creditor waits to report the chargeoff to the CRA.

*40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations*, Federal Trade Commission, 2011 3020575, at *84 (2011).

7. The FCRA imposes duties on persons who furnish information to a consumer reporting agency (a "furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5). Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2-(b)(1)(A-E).

8. Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to CRAs. After a consumer has submitted a dispute to a CRA, the CRA must notify the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(2). The CRA must provide this notice of dispute within five days of receipt

of the dispute and must include "all relevant information" provided by the consumer. 15 U.S.C. § 1681i(a)(2)(B).

9. Once a furnisher receives notice of a dispute from a CRA, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA in connection with the dispute; and (3) report the results of the investigation to the CRA. 15 § U.S.C. 1681s-2(b)(1)(A)-(C).

10. Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to CRAs, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681s-2(b)(1)(E).

11. In this Circuit and across the country, to meet their obligations under Section 1681s-2(b), furnishers must do more to investigate a consumer dispute from a CRA than glibly review their records. The standard for such investigations is reasonableness, which involves a detailed inquiry into a consumer's dispute.

12. This case presents claims against First Financial Bank for its failure to meets its investigatory obligations. Rather than conducting a searching inquiry into the problem Plaintiffs repeatedly raised, Defendant simply regurgitated false information to the CRAs, and even fabricated additional false information in response to Plaintiffs' disputes. Defendant did not take into account any of the information Plaintiffs provided with their multiple disputes or carefully check other sources that might have led to a correction of Defendant's reporting of Plaintiffs'

accounts. Such an investigation is a textbook violation of Section 1681s-2(b), entitling Plaintiffs to actual damages, punitive damages, attorneys' fees, and costs of suit under the FCRA.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over Plaintiffs' FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

14. Venue is proper in this Court under 28 U.S.C. § 1391 as Plaintiffs are both residents of Vermillion County, Illinois, and Defendant regularly conducts business in this district, including contracting to supply goods and services in this district.

## PARTIES

15. Mr. Meis and Ms. Meis are "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

16. Defendant is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 1681s-2[1], and it conducts substantial and regular business activities in this judicial district.

## FACTUAL ALLEGATIONS

17. In July 2000, Plaintiffs (a formerly married couple) executed a mortgage loan with Defendant in the amount of $175,000 (the "Mortgage").

18. The Mortgage was collateralized by residential property located at 13986 N. 600 East Road in Fairmount, Illinois.

---

[1] Plaintiffs are making claims against Defendant under Section 1681s-2(b). Plaintiffs are not making claims against Defendant under Section 1681s-2(a).

19. Defendant was responsible for, among other things, mortgage administration activities, including collecting payments, pursuing collections from Plaintiffs in the event of delinquency, and pursuing loss mitigation or foreclosure, as appropriate, if Plaintiffs became delinquent on mortgage payments.

20. In 2010, Plaintiffs became unable to continue to make payments on the Mortgage.

21. Plaintiffs' last payment on the Mortgage was December 2010.

22. Plaintiffs have not made any payment on the Mortgage since December 2010.

23. Plaintiffs' first month of delinquency on the Mortgage was January 2011, and they did not make a payment thereafter.

24. On May 26, 2011, Defendant sued Plaintiffs in Vermilion County Circuit Court to foreclose on the Mortgage.

25. The foreclosure case was assigned case number 2011CH000125.

26. On September 14, 2011, the Vermilion County Circuit Court entered a Judgment of Foreclosure, ordering the property to be sold.

27. On March 8, 2012, the property was sold for $138,001.

28. On March 19, 2012, the Sheriff of Vermilion County signed a Sheriff's Deed, transferring ownership of the property to the new owners.

29. Plaintiffs understood that although the Vermilion County Circuit Court entered a foreclosure judgment against them, the Mortgage account could still appear on their credit reports through December 2017 – seven years following the date of first delinquency.

30. In March 2023, believing the Mortgage account had been deleted from his consumer reports because it was 12 years old, Mr. Meis applied for a new mortgage with Flat Branch Mortgage.

31. As part of the application process, Flat Branch Mortgage purchased a consumer report on Mr. Meis from Equifax.

32. On March 1, 2023, Equifax furnished a consumer report on Mr. Meis to Flat Branch Mortgage.

33. In the consumer report, Equifax reported the adverse Mortgage account.

34. The consumer report showed that the Mortgage account was an adverse account that was older than seven years.

35. Equifax reported that Mr. Meis' date of last payment on the Mortgage account was "Dec 2010."

36. Equifax reported the payment history on the Mortgage account and showed no payments made on it after December 2010.

37. Equifax also reported that the Mortgage account was a "Foreclosure."

38. Defendant did not report to Equifax a date of first delinquency for the Mortgage. It failed to do so despite reporting that the account was a foreclosure with a date of last payment made in December 2010.

39. Defendant's failure to report a date of first delinquency violated Section 1681s-2(a)(5)(A).

40. Because of the Mortgage account's appearance on Mr. Meis' Equifax consumer report, Flat Branch Mortgage informed Mr. Meis that it was denying his mortgage application.

41. Once Mr. Meis discovered this inaccurate and obsolete information in his consumer reports, he also discovered several other credit denials that may have been related to Equifax's reporting of the obsolete and adverse Mortgage account, including non-approvals with PrimeLending, Rocket Mortgage, and Sam Leman Toyota Bloomington.

42. On or about April 6, 2023, Mr. Meis filed a dispute with Equifax.

43. In the dispute, Mr. Meis informed Equifax that it was improperly reporting the Mortgage account: "over 10 years old.  Please remove as soon as possible!"

44. Equifax received Mr. Meis' dispute.

45. Equifax sent Defendant all relevant information about Mr. Meis's dispute that it received from Mr. Meis.

46. Defendant did not conduct a reasonable reinvestigation of Mr. Meis's dispute, as required by the FCRA.

47. For example, Defendant did not review its own records to confirm the date of first delinquency was in January 2011.

48. Instead, Defendant told Equifax that the "date of first delinquency" was 3/01/2023. This date of first delinquency was fictitious and inaccurate.

49. Plaintiffs had made no payments on the Mortgage since 2010.

50. Plaintiffs did not make any payments on the Mortgage in 2011.

51. Plaintiffs did not make any payments on the Mortgage in 2012.

52. Plaintiffs did not make any payments on the Mortgage in 2013.

53. Plaintiffs did not make any payments on the Mortgage in 2014.

54. Plaintiffs did not make any payments on the Mortgage in 2015.

55. Plaintiffs did not make any payments on the Mortgage in 2016.

56. Plaintiffs did not make any payments on the Mortgage in 2017.

57. Plaintiffs did not make any payments on the Mortgage in 2018.

58. Plaintiffs did not make any payments on the Mortgage in 2019.

59. Plaintiffs did not make any payments on the Mortgage in 2020.

60. Plaintiffs did not make any payments on the Mortgage in 2021.

61. Plaintiffs did not make any payments on the Mortgage in 2022.

62. Plaintiffs did not make any payments on the Mortgage in 2023.

63. Defendant failed to review Plaintiffs' payment history. Had it reviewed the payment history, it would have seen that Plaintiffs had made no payments since 2010.

64. Had Defendant reviewed Plaintiffs' payment history, it would have seen the date of first delinquency it reported in response to Plaintiff's dispute - 3/01/2023 – was incorrect.

65. Defendant also had to have known that the date of first delinquency was not 3/01/2023, as it reported to Equifax in the very same communication that the date of Mr. Meis' last payment was 12/01/2010. It took no steps to reconcile this inconsistency.

66. Defendant also failed to review any of the foreclosure case records from Vermilion County Circuit Court, a case in which it was the plaintiff. Had it reviewed those records, it would have seen that the foreclosure sale occurred in 2012.

67. Effectively, by reporting to Equifax a date of first delinquency in 2023, Defendant re-aged the debt to ensure that it would stay on Mr. Meis' consumer report.

68. On April 6, 2023, Equifax sent Mr. Meis the results of its reinvestigation.

69. It told Mr. Meis that it had researched the credit account and "the following fields have been modified: *Additional Information *Date of Major Delinquency 1st Reported *Historical Account Information."

70. Equifax did not remove the obsolete adverse account from Mr. Meis' consumer report. Rather, it relied on Defendant's faulty reinvestigation and modified the fields identified above based on information it received from Defendant.

71. After Defendant failed to reasonably reinvestigate, Mr. Meis filed a second dispute with Equifax on April 27, 2023.

72. In this second dispute, Mr. Meis told Equifax that "the account is old and was foreclosed on in September 2011. The whole account should not be on my credit report."

73. Equifax received Mr. Meis' second dispute.

74. Equifax sent Defendant all relevant information about Mr. Meis's second dispute that it received from Mr. Meis.

75. Defendant did not conduct a reasonable reinvestigation, as required by the FCRA.

76. Once again Defendant did not review its own internal records, including the payment history on the account, or external records related to the foreclosure.

77. Defendant reported to Equifax that it had "verified as reported" the information that Equifax had provided. This information included no date of first delinquency, and the fact that the account was a completed foreclosure.

78. On May 12, 2023, Equifax sent Mr. Meis the results of its reinvestigation.

79. In the dispute results, Equifax told Mr. Meis that:

> This creditor has verified to our company that the current status is being reported correctly. This creditor has verified that the prior paying history is

9

being reported correctly. This creditor/agency has verified to our company that the date of last payment is being reported correctly. The following fields have been modified: *Additional Information *Historical Account Information.

80. Again, Defendant did not correctly report to Equifax that this foreclosure account had a date of first delinquency at all.

81. Separately, Ms. Meis also discovered that Equifax was reporting the same obsolete information from Defendant in her credit reports.

82. On May 1, 2023, Ms. Meis filed a dispute with Equifax. She informed Equifax that "This account is old and should not be on my credit report. The foreclosure occurred in 2011."

83. Equifax received Ms. Meis' dispute.

84. Equifax sent Defendant all relevant information about Ms. Meis' dispute that it received from Ms. Meis.

85. Defendant did not conduct a reasonable reinvestigation with respect to the disputed information.

86. Defendant falsely informed Equifax that the "date of first delinquency" was 3/1/2023.

87. The date of first delinquency Defendant reported to Equifax was fictitious and inaccurate.

88. Plaintiffs did not make any payments on the Mortgage in 2011.

89. Plaintiffs did not make any payments on the Mortgage in 2012.

90. Plaintiffs did not make any payments on the Mortgage in 2013.

91. Plaintiffs did not make any payments on the Mortgage in 2014.

92. Plaintiffs did not make any payments on the Mortgage in 2015.

93. Plaintiffs did not make any payments on the Mortgage in 2016.

94. Plaintiffs did not make any payments on the Mortgage in 2017.

95. Plaintiffs did not make any payments on the Mortgage in 2018.

96. Plaintiffs did not make any payments on the Mortgage in 2019.

97. Plaintiffs did not make any payments on the Mortgage in 2020.

98. Plaintiffs did not make any payments on the Mortgage in 2021.

99. Plaintiffs did not make any payments on the Mortgage in 2022.

100. Plaintiffs did not make any payments on the Mortgage in 2023.

101. Defendant failed to review Plaintiffs' payment history. Had it reviewed the payment history, it would have seen that Plaintiffs had made no payments since 2010.

102. Defendant also had to have known that the date of first delinquency was not 3/01/2023, as it reported to Equifax in the very same communication that the date of Ms. Meis' last payment was 12/01/2010. It took no steps to reconcile this inconsistency

103. Defendant also failed to review any of the foreclosure case records from Vermilion County Circuit Court, a case in which it was the plaintiff. Had it reviewed those records, it would have seen that the foreclosure sale occurred in 2012.

104. Effectively, by reporting to Equifax a date of first delinquency in 2023, Defendant was re-aging the debt to ensure that it would stay on Ms. Meis' consumer report.

105. On May 1, 2023, Equifax sent Ms. Meis the results of its reinvestigation.

106. Equifax did not delete obsolete account.

107. Rather than remove the obsolete account, Equifax inserted a new "Date of Maj. Del. 1st Rptd" as "08/2019." This was obviously erroneous as the account also reported that the

last payment was made on "12/10." Defendant took no steps during its reinvestigation to reconcile this facially inconsistent information.

108. Equifax relied on Defendant's reinvestigation results and re-aged the debt.

109. Ms. Meis submitted a second dispute to Equifax the following day, May 2nd.

110. She explained: "My last payment was in 2010 and the foreclosure happened in 2011. A date of first delinquency in 2019 is wrong and the whole account shouldn't even be on my report anymore."

111. Equifax received Ms. Meis's dispute.

112. Equifax sent Defendant all relevant information about Ms. Meis' second dispute that it received from Ms. Meis.

113. Defendant did not conduct a reasonable reinvestigation with respect to the disputed information.

114. Defendant again informed Equifax that the "date of first delinquency" was 3/1/2023.

115. The date of first delinquency was reported by Defendant was fictitious and inaccurate. Plaintiffs had made no payments on the Mortgage account since 2010.

116. Defendant failed to review Plaintiffs' payment history. Had it reviewed the payment history, it would have seen that Plaintiffs had made no payments since 2010.

117. Defendant also had to have known that the date of first delinquency was not 3/01/2023, as it reported to Equifax in the very same communication that the date of Ms. Meis' last payment was 12/01/2010. It took no steps to reconcile this inconsistency.

118. Defendant also failed to review any of the foreclosure case records from Vermilion County Circuit Court, a case in which it was the plaintiff. Had it reviewed those records, it would have seen that the foreclosure sale occurred in 2012.

119. Effectively, by reporting to Equifax a date of first delinquency in 2023, Defendant was re-aging the debt to ensure that it would stay on Ms. Meis' consumer report.

## CLAIMS FOR RELIEF

### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

120. Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

121. On at least four occasions, Defendant violated Section 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes.

122. Defendant understood the nature of Plaintiffs' disputes when it received them from Equifax.

123. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax.

124. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate, derogatory, and obsolete information that it was reporting in Plaintiffs' credit files.

125. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiffs have suffered, and continue to suffer, actual damages, including credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score,

invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

126. The law in this District, the Seventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a creditor when it received a consumer's FCRA dispute through a CRA.

127. Defendant was aware of the well-established case law requiring a detailed and investigation into consumer disputes when it followed the ACDV procedures used regarding Plaintiffs' numerous disputes.

128. The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

129. Plaintiffs are entitled to recover attorneys' fees pursuant to 15 U.S.C. § 1681n(a), or, alternatively, 15 U.S.C. § 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. Actual damages to be determined by the jury; or statutory damages of $100 to $1,000;
2. Punitive damages to be determined by the jury;
3. Attorneys' fees; and
4. Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

DATED: November 8, 2023

By: /s/ Stephanie R. Tatar
Stephanie R. Tatar
3333 Warrenville Road, Suite 200
Lisle, IL 60532
T: (312) 423-4994
E: Stephanie@TheTatarLawFirm.com


Jeffrey B. Sand
(pro hac vice application forthcoming)
WEINER & SAND LLC
800 Battery Avenue SW
Suite 100
Atlanta, Georgia 30339
(404) 254-0842 (Tel.)
(404) 205-5029 (Tel.)
(866) 800-1482 (Fax)
js@wsjustice.com
aw@wsjustice.com

COUNSEL FOR PLAINTIFF