## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| SAMUEL MEIS and BOBETTE MEIS, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No.: 2:23-cv-2251 |
| FIRST FINANCIAL BANK N.A., | ) ) ) |
| Defendant. | ) ) ) ) |

## DEFENDANT'S ANSWER TO COMPLAINT

NOW COMES, First Financial Bank, N.A. ("First"), through its attorney, Steven T. Mann, of Caughey, Legner, Freehill, Ehrgott and Mann, LLP and answers as follows:

1. This is an action for damages brought by two individual consumers, Samuel Meis and Bobette Meis, against First Financial Bank N.A. for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

   **ANSWER:** First admits the statement made in paragraph 1 is a summary of the Plaintiffs' Complaint.

## PRELIMINARY STATEMENT

2. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate and obsolete credit reporting.

   **ANSWER:** First admits that Congress enacted the Fair Credit Reporting Act, 15 U.S.C § 1681 *et seq.* ("FCRA"), as alleged in paragraph 2, but lacks knowledge or information sufficient to form a belief as to all the underlying intents and purposes of Congress.

3. Congress did not want consumers to be burdened with stale adverse information in their consumer reports. *See* S. Rep. No 91-517, at 1 (1969). For this reason, the FCRA requires consumer reporting agencies (CRAs) to exclude most adverse information that is older than seven years. 15 U.S.C. § 1681c(a). This mandate is further cemented by the FCRA's requirement that CRAs use reasonable procedures to ensure they do not include outdated adverse information in their reports. 15 U.S.C. § 1681e(a).

**ANSWER**: First admits that Congress enacted the FCRA, but lacks knowledge or information sufficient to form a belief as to the conclusory statements made regarding the underlying intents and purposes of Congress. First admits that the FCRA requires CRAs (such as Equifax as it relates to this Complaint) to exclude most information that is older than seven years, First also admits that the FCRA mandates Equifax and other CRAs use reasonable procedures to insure they do not report outdated adverse information.

4. Under the FCRA, the date of commencement of the obsolescence period for a mortgage account is the date of the first delinquency on the account. In other words, with respect to the timeframe a CRA may report an adverse mortgage account, the seven-year time period under Section 1681c(a) begins on the date a consumer first misses a payment on his or her mortgage.

**ANSWER**: First admits Equifax and other CRAs are subject to the provisions of the FCRA alleged in paragraph 4.

5. The FCRA requires that any person who furnishes information about a delinquent account must inform the CRA when the delinquency commenced. 15 U.S.C. § 168ls-2(a)(5)(A).

**ANSWER**: First admits the conclusory statement in paragraph 5 that the FCRA outlines requirements and other obligations of furnishers, including those in § 1681s-2(a)(5)(A).

6. Regulatory guidance from the Federal Trade Commission further reinforces this requirement for furnishers to report the date of first delinquency:
> Furnishers of consumer information to CRAs must provide the month and year of the commencement of the delinquency that immediately preceded the placement for collection, charge to profit or loss, or similar action. They may not substitute an alternative, later date ... The month and year of the commencement of the delinquency that immediately preceded the chargeoff is the month the first payment was missed, regardless of how long after the delinquency the creditor waits to report the chargeoff to the CRA.

*40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary Interpretations,* Federal Trade Commission, 2011 3020575, at *84 (2011).

**ANSWER**: First lacks knowledge or information sufficient to form a belief as to the conclusory statement made in paragraph 6 concerning the intent of any comments of the Federal Trade Commission.

7. The FCRA imposes duties on persons who furnish information to a

consumer reporting agency (a "furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5). Specifically, the furnisher must take certain actions after receipt of notice of a consumer dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2-(b)(l)(A-E).

> **ANSWER:** First admits the conclusory statement in paragraph 7 that the FCRA outlines requirements and other obligations of furnishers, including those in § 1681s-2(a),(2),(4), and (5).

8. Section 1681s-2(b) of the FCRA establishes a mechanism for consumers to dispute the accuracy or completeness of information that furnishers provide to CRAs. After a consumer has submitted a dispute to a CRA, the CRA must notify the furnisher of the disputed information. 15 U.S.C. § 1681i(a)(2). The CRA must provide this notice of dispute within five days of receipt of the dispute and must include "all relevant information" provided by the consumer. 15 U.S.C. § 168li(a)(2)(B).

> **ANSWER**: First admits the conclusory statement in paragraph 8 that the FCRA provides mechanisms for consumers to dispute information provided to CRAs, and that CRAs have certain obligations in handling such disputes.

9. Once a furnisher receives notice of a dispute from a CRA, Section 1681s-2(b) requires that the furnisher "shall" (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA in connection with the dispute; and (3) report the results of the investigation to the CRA. 15 § U.S.C. 1681s-2(b)(l)(A)- (C).

> **ANSWER:** First admits the FCRA places certain requirements upon furnishers, including in §1681s-2(b).

10. Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must modify, delete, or permanently block the reporting of that information to CRAs, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681s-2(b)(l)(E).

> **ANSWER:** First admits the FCRA places certain requirements upon furnishers, including in §1681s-2(b)(1)(E) an denies all other allegations that contradict the statutory provision cited.

11. In this Circuit and across the country, to meet their obligations under Section 1681s- 2(b), furnishers must do more to investigate a consumer dispute from a CRA than glibly review their records. The standard for such investigations is reasonableness, which involves a detailed inquiry into a consumer's dispute.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to which statements made by this Circuit, or others across the country, are referred to in paragraph 11. First denies the implication and allegation that First's investigation was insufficient.

12. This case presents claims against First Financial Bank for its failure to meet its investigatory obligations. Rather than conducting a searching inquiry into the problem Plaintiffs repeatedly raised, Defendant simply regurgitated false information to the CRAs, and even fabricated additional false information in response to Plaintiffs' disputes. Defendant did not take into account any of the information Plaintiffs provided with their multiple disputes or carefully check other sources that might have led to a correction of Defendant's reporting of Plaintiffs' accounts. Such an investigation is a textbook violation of Section 168ls-2(b), entitling Plaintiffs to actual damages, punitive damages, attorneys' fees, and costs of suit under the FCRA.

**ANSWER:** First denies the conclusory statements made in paragraph 12.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over Plaintiffs' FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

**ANSWER**: First admits paragraph 13.

14. Venue is proper in this Court under 28 U.S.C. § 1391 as Plaintiffs are both residents of Vermillion County, Illinois, and Defendant regularly conducts business in this district, including contracting to supply goods and services in this district.

**ANSWER**: First admits that it conducts business in this district, but lacks knowledge or information sufficient to form a belief as to the other conclusory or factual statements made in paragraph 13.

## PARTIES

15. Mr. Meis and Ms. Meis are "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

**ANSWER:** First admits to the allegations made in paragraph 15.

16. Defendant is a person who furnishes information to consumer reporting agencies under the FCRA, 15 U.S.C. § 168ls-2, and it conducts substantial and regular business activities in this judicial district.

**ANSWER:** First admits that certain of its activities result in First being a furnisher under the FCRA, and that it conducts regular business in this district. First denies any other allegations made in paragraph 16.

## FACTUAL ALLEGATIONS

17. In July 2000, Plaintiffs (a formerly married couple) executed a mortgage loan with Defendant in the amount of $175,000 (the "Mortgage").

**ANSWER**: First admits the allegations made in paragraph 17.

18. The Mortgage was collateralized by residential property located at 13986 N. 600 East Road in Fairmount, Illinois.

**ANSWER**: First admits to the allegations made in paragraph 18.

19. Defendant was responsible for, among other things, mortgage administration activities, including collecting payments, pursuing collections from Plaintiffs in the event of delinquency, and pursuing loss mitigation or foreclosure, as appropriate, if Plaintiffs became delinquent on mortgage payments.

**ANSWER**: First admits it had the right, and exercised certain rights, with respect to mortgage administration, colleting payments, and pursuing collections from the Plaintiffs, but denies any allegation in paragraph 19 that First had a responsibility to take those actions.

20. In 2010, Plaintiffs became unable to continue to make payments on the Mortgage.

**ANSWER**: First lacks knowledge or information sufficient to form a belief as to the extent of Plaintiffs' ability to make payments in 2010 as alleged in paragraph 20.

21. Plaintiffs' last payment on the Mortgage was December 2010.

**ANSWER**: First admits that the allegation in paragraph 21 that Plaintiffs' last payment was made in December 2010 but denies any allegation or inference that the December 2010 payment was the last payment obligation.

22. Plaintiffs have not made any payment on the Mortgage since December 2010.

**ANSWER:** First admits the allegation made in paragraph 22.

23. Plaintiffs' first month of delinquency on the Mortgage was January 2011, and they did not make a payment thereafter.

**ANSWER**: First admits the allegation made in paragraph 23.

24. On May 26, 2011, Defendant sued Plaintiffs in Vermilion County Circuit Court to foreclose on the Mortgage.

**ANSWER:** First admits the allegation made in paragraph 24.

25. The foreclosure case was assigned case number 2011CH000125.

**ANSWER:** First admits the allegation made in paragraph 25.

26. On September 14, 2011, the Vermilion County Circuit Court entered a Judgment of Foreclosure, ordering the property to be sold.

**ANSWER:** First admits the allegation made in paragraph 26.

27. On March 8, 2012, the property was sold for $138,001.

**ANSWER:** First admits the allegation made in paragraph 27.

28. On March 19, 2012, the Sheriff of Vermilion County signed a Sheriff's Deed, transferring ownership of the property to the new owners.

**ANSWER:** First admits that a Sheriff's deed transferred ownership to the new owners, but lacks information to admit or deny the date such deed was signed by the Sheriff.

29. Plaintiffs understood that although the Vermilion County Circuit Court entered a foreclosure judgment against them, the Mortgage account could still appear on their credit reports through December 2017 – seven years following the date of first delinquency.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 29.

30. In March 2023, believing the Mortgage account had been deleted from his consumer reports because it was 12 years old, Mr. Meis applied for a new mortgage with Flat Branch Mortgage.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as

to the allegations made in paragraph 30.

31. As part of the application process, Flat Branch Mortgage purchased a consumer report on Mr. Meis from Equifax.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 31.

32. On March 1, 2023, Equifax furnished a consumer report on Mr. Meis to Flat Branch Mortgage.

**ANSWER**: First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 32.

33. In the consumer report, Equifax reported the adverse Mortgage account.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 33.

34. The consumer report showed that the Mortgage account was an adverse account that was older than seven years.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 34.

35. Equifax reported that Mr. Meis' date of last payment on the Mortgage account was "Dec 2010."

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 35.

36. Equifax reported the payment history on the Mortgage account and showed no payments made on it after December 2010.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 36.

37. Equifax also reported that the Mortgage account was a "Foreclosure."

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 37.

38. Defendant did not report to Equifax a date of first delinquency for the Mortgage. It failed to do so despite reporting that the account was a foreclosure with a date of last

payment made in December 2010.

**ANSWER:** First denies the allegations made in paragraph 38.

39. Defendant's failure to report a date of first delinquency violated Section 1681s-2(a)(5)(A).

**ANSWER:** First denies the allegation made in paragraph 39.

40. Because of the Mortgage account's appearance on Mr. Meis' Equifax consumer report, Flat Branch Mortgage informed Mr. Meis that it was denying his mortgage application.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 40.

41. Once Mr. Meis discovered this inaccurate and obsolete information in his consumer reports, he also discovered several other credit denials that may have been related to Equifax's reporting of the obsolete and adverse Mortgage account, including non-approvals with Prime Lending, Rocket Mortgage, and Sam Leman Toyota Bloomington.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 41.

42. On or about April 6, 2023, Mr. Meis filed a dispute with Equifax.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 42.

43. In the dispute, Mr. Meis informed Equifax that it was improperly reporting the Mortgage account: "over 10 years old. Please remove as soon as possible!"

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 43.

44. Equifax received Mr. Meis' dispute.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 44.

45. Equifax sent Defendant all relevant information about Mr. Meis's dispute that it received from Mr. Meis.

**ANSWER:** First denies the allegation made in paragraph 45.

46. Defendant did not conduct a reasonable reinvestigation of Mr. Meis's dispute, as required by the FCRA.

**ANSWER:** First denies the allegation made in paragraph 46.

47. For example, Defendant did not review its own records to confirm the date of first delinquency was in January 2011.

**ANSWER:** First denies the allegation made in paragraph 47.

48. Instead, Defendant told Equifax that the "date of first delinquency" was 3/01/2023. This date of first delinquency was fictitious and inaccurate.

**ANSWER:** First denies the allegation made in paragraph 48.

49. Plaintiffs had made no payments on the Mortgage since 2010.

**ANSWER:** First admits the allegations made in paragraph 49.

50. Plaintiffs did not make any payments on the Mortgage in 2011.

**ANSWER:** First admits the allegations made in paragraph 50.

51. Plaintiffs did not make any payments on the Mortgage in 2012.

**ANSWER:** First admits the allegations made in paragraph 51.

52. Plaintiffs did not make any payments on the Mortgage in 2013.

**ANSWER:** First admits the allegations made in paragraph 52.

53. Plaintiffs did not make any payments on the Mortgage in 2014.

**ANSWER:** First admits the allegations made in paragraph 53.

54. Plaintiffs did not make any payments on the Mortgage in 2015.

**ANSWER:** First admits the allegations made in paragraph 54.

55. Plaintiffs did not make any payments on the Mortgage in 2016.

**ANSWER:** First admits the allegations made in paragraph 55.

56. Plaintiffs did not make any payments on the Mortgage in 2017.

**ANSWER:** First admits the allegations made in paragraph 56.

57. Plaintiffs did not make any payments on the Mortgage in 2018.

**ANSWER:** First admits the allegations made in paragraph 57.

58. Plaintiffs did not make any payments on the Mortgage in 2019.

**ANSWER:** First admits the allegations made in paragraph 58.

59. Plaintiffs did not make any payments on the Mortgage in 2020.

**ANSWER:** First admits the allegations made in paragraph 59.

60. Plaintiffs did not make any payments on the Mortgage in 2021.

**ANSWER:** First admits the allegations made in paragraph 60.

61. Plaintiffs did not make any payments on the Mortgage in 2022.

**ANSWER:** First admits the allegations made in paragraph 61.

62. Plaintiffs did not make any payments on the Mortgage in 2023.

**ANSWER:** First admits the allegations made in paragraph 62.

63. Defendant failed to review Plaintiffs' payment history. Had it reviewed the payment history, it would have seen that Plaintiffs had made no payments since 2010.

**ANSWER:** First denies the allegation made in paragraph 63.

64. Had Defendant reviewed Plaintiffs' payment history, it would have seen the date of first delinquency it reported in response to Plaintiff's dispute - 3/01/2023 – was incorrect.

**ANSWER:** First denies the allegation made in paragraph 64.

65. Defendant also had to have known that the date of first delinquency was not 3/01/2023, as it reported to Equifax in the very same communication that the date of Mr. Meis' last payment was 12/01/2010. It took no steps to reconcile this inconsistency.

**ANSWER:** First denies the allegation made in paragraph 65.

66. Defendant also failed to review any of the foreclosure case records from Vermilion County Circuit Court, a case in which it was the plaintiff. Had it reviewed those records, it would have seen that the foreclosure sale occurred in 2012.

**ANSWER:** First denies the allegation made in paragraph 66.

67. Effectively, by reporting to Equifax a date of first delinquency in 2023, Defendant re-aged the debt to ensure that it would stay on Mr. Meis' consumer report.

**ANSWER:** First denies the allegation made in paragraph 67.

68. On April 6, 2023, Equifax sent Mr. Meis the results of its reinvestigation.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 68.

69. It told Mr. Meis that it had researched the credit account and "the following fields have been modified: *Additional Information *Date of Major Delinquency 1st Reported *Historical Account Information."

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 69.

70. Equifax did not remove the obsolete adverse account from Mr. Meis' consumer report. Rather, it relied on Defendant's faulty reinvestigation and modified the fields identified above based on information it received from Defendant.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 70.

71. After Defendant failed to reasonably reinvestigate, Mr. Meis filed a second dispute with Equifax on April 27, 2023.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegation made in paragraph 71 as to the date of a second dispute, First denies any other allegations made in paragraph 71.

72. In this second dispute, Mr. Meis told Equifax that "the account is old and was foreclosed on in September 2011. The whole account should not be on my credit report."

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 72.

73. Equifax received Mr. Meis' second dispute.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 73.

74. Equifax sent Defendant all relevant information about Mr. Meis's second dispute that it received from Mr. Meis.

**ANSWER:** First denies the allegation made in paragraph 74.

75. Defendant did not conduct a reasonable reinvestigation, as required by the FCRA.

**ANSWER:** First denies the allegation made in paragraph 75.

76. Once again Defendant did not review its own internal records, including the payment history on the account, or external records related to the foreclosure.

**ANSWER:** First denies the allegation made in paragraph 76.

77. Defendant reported to Equifax that it had "verified as reported" the information that Equifax had provided. This information included no date of first delinquency, and the fact that the account was a completed foreclosure.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 77 as it does not include what information was allegedly provided by Equifax.

78. On May 12, 2023, Equifax sent Mr. Meis the results of its reinvestigation.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 78.

79. In the dispute results, Equifax told Mr. Meis that:

> This creditor has verified to our company that the current status is being reported correctly. This creditor has verified that the prior paying history is being reported correctly. This creditor/agency has verified to our company that the date of last payment is being reported correctly. The following fields have been modified: *Additional Information *Historical Account Information.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 79.

80. Again, Defendant did not correctly report to Equifax that this foreclosure account had a date of first delinquency at all.

**ANSWER:** First denies the allegation made in paragraph 80.

81. Separately, Ms. Meis also discovered that Equifax was reporting the same obsolete information from Defendant in her credit reports.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 81.

82. On May 1, 2023, Ms. Meis filed a dispute with Equifax. She informed Equifax that "This account is old and should not be on my credit report. The foreclosure occurred in 2011."

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 82.

83. Equifax received Ms. Meis' dispute.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 83.

84. Equifax sent Defendant all relevant information about Ms. Meis' dispute that it received from Ms. Meis.

**ANSWER:** First denies the allegation made in paragraph 84.

85. Defendant did not conduct a reasonable reinvestigation with respect to the disputed information.

**ANSWER:** First denies the allegation made in paragraph 85.

86. Defendant falsely informed Equifax that the "date of first delinquency" was 3/1/2023.

**ANSWER:** First denies the allegation made in paragraph 86.

87. The date of first delinquency Defendant reported to Equifax was fictitious and inaccurate.

**ANSWER:** First denies the allegation made in paragraph 87.

88. Plaintiffs did not make any payments on the Mortgage in 2011.

**ANSWER:** First admits the allegations made in paragraphs 88.

89. Plaintiffs did not make any payments on the Mortgage in 2012.

**ANSWER:** First admits the allegations made in paragraph 89.

90. Plaintiffs did not make any payments on the Mortgage in 2013.

**ANSWER:** First admits the allegations made in paragraph 90.

91. Plaintiffs did not make any payments on the Mortgage in 2014.

**ANSWER:** First admits the allegations made in paragraph 91.

92. Plaintiffs did not make any payments on the Mortgage in 2015.

**ANSWER:** First admits the allegations made in paragraph 92.

93. Plaintiffs did not make any payments on the Mortgage in 2016.

**ANSWER:** First admits the allegations made in paragraph 93.

94. Plaintiffs did not make any payments on the Mortgage in 2017.

**ANSWER:** First admits the allegations made in paragraph 94.

95. Plaintiffs did not make any payments on the Mortgage in 2018.

**ANSWER:** First admits the allegations made in paragraph 95.

96. Plaintiffs did not make any payments on the Mortgage in 2019.

**ANSWER:** First admits the allegations made in paragraph 96.

97. Plaintiffs did not make any payments on the Mortgage in 2020.

**ANSWER:** First admits the allegations made in paragraph 97.

98. Plaintiffs did not make any payments on the Mortgage in 2021.

**ANSWER:** First admits the allegations made in paragraph 98.

99. Plaintiffs did not make any payments on the Mortgage in 2022.

**ANSWER:** First admits the allegations made in paragraph 99.

100. Plaintiffs did not make any payments on the Mortgage in 2023.

**ANSWER:** First admits the allegations made in paragraph 100.

101. Defendant failed to review Plaintiffs' payment history. Had it reviewed the payment history, it would have seen that Plaintiffs had made no payments since 2010.

**ANSWER:** First denies the allegations made in paragraph 101.

102. Defendant also had to have known that the date of first delinquency was not 3/01/2023, as it reported to Equifax in the very same communication that the date of Ms. Meis' last payment was 12/01/2010. It took no steps to reconcile this inconsistency.

**ANSWER:** First denies the allegations made in paragraph 102.

103. Defendant also failed to review any of the foreclosure case records from Vermilion County Circuit Court, a case in which it was the plaintiff. Had it reviewed those records, it would have seen that the foreclosure sale occurred in 2012.

**ANSWER:** First denies the allegations made in paragraph 103.

104. Effectively, by reporting to Equifax a date of first delinquency in 2023, Defendant was re-aging the debt to ensure that it would stay on Ms. Meis' consumer report.

**ANSWER:** First denies the allegations made in paragraph 104.

105. On May 1, 2023, Equifax sent Ms. Meis the results of its reinvestigation.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 105.

106. Equifax did not delete obsolete account.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 106.

107. Rather than remove the obsolete account, Equifax inserted a new "Date of Maj. Del. 1st Rptd" as "08/2019." This was obviously erroneous as the account also reported that the last payment was made on "12/10." Defendant took no steps during its reinvestigation to reconcile this facially inconsistent information.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 107.

108. Equifax relied on Defendant's reinvestigation results and re-aged the debt.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 108.

109. Ms. Meis submitted a second dispute to Equifax the following day, May 2nd.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 109.

110. She explained: "My last payment was in 2010 and the foreclosure happened in 2011. A date of first delinquency in 2019 is wrong and the whole account shouldn't even be on my report anymore."

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 110.

111. Equifax received Ms. Meis's dispute.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 111.

112. Equifax sent Defendant all relevant information about Ms. Meis' second dispute that it received from Ms. Meis.

**ANSWER:** First denies the allegation made in paragraph 112.

113. Defendant did not conduct a reasonable reinvestigation with respect to the disputed information.

**ANSWER:** First denies the allegation made in paragraph 113.

114. Defendant again informed Equifax that the "date of first delinquency" was 3/1/2023.

**ANSWER:** First denies the allegation made in paragraph 114.

115. The date of first delinquency was reported by Defendant was fictitious and inaccurate. Plaintiffs had made no payments on the Mortgage account since 2010.

**ANSWER:** First denies the allegations made in paragraph 115.

116. Defendant failed to review Plaintiffs' payment history. Had it reviewed the payment history, it would have seen that Plaintiffs had made no payments since 2010.

**ANSWER:** First denies the allegations made in paragraph 116.

117.  Defendant also had to have known that the date of first delinquency was not 3/01/2023, as it reported to Equifax in the very same communication that the date of Ms. Meis' last payment was 12/01/2010. It took no steps to reconcile this inconsistency.

**ANSWER:** First denies the allegation made in paragraph 117.

118.  Defendant also failed to review any of the foreclosure case records from Vermilion County Circuit Court, a case in which it was the plaintiff. Had it reviewed those records, it would have seen that the foreclosure sale occurred in 2012.

**ANSWER:** First denies the allegation made in paragraph 118.

119.  Effectively, by reporting to Equifax a date of first delinquency in 2023, Defendant was re-aging the debt to ensure that it would stay on Ms. Meis' consumer report.

**ANSWER:** First denies the allegation made in paragraph 119.

**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

120.  Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

**ANSWER:** First denies the statement in paragraph 120 insofar as it alleges all allegations made in the Complaint are factual.

121.  On at least four occasions, Defendant violated Section 1681s-2(b)(l)(A) by failing to fully and properly investigate Plaintiffs' disputes.

**ANSWER:** First denies the allegations made in paragraph 121.

122.  Defendant understood the nature of Plaintiffs' disputes when it received them from Equifax.

**ANSWER:** First denies it had developed any specific understanding as to the nature of any dispute at the time it was received from Equifax as alleged in paragraph 122.

123.  Defendant violated 15 U.S.C. § 168ls-2(b)(l)(B) by failing to review all relevant information provided by Equifax.

**ANSWER:** First denies the allegation made in paragraph 123.

124. Defendant violated 15 U.S.C. § 168ls-2(b)(l)(E) by failing to modify, delete, or permanently block the reporting of the inaccurate, derogatory, and obsolete information that it was reporting in Plaintiffs' credit files.

**ANSWER:** First denies the allegation made in paragraph 124.

125. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiffs have suffered, and continue to suffer, actual damages, including credit denials, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiffs seek damages in an amount to be determined by the jury.

**ANSWER:** First denies the allegations made in paragraph 125.

126. The law in this District, the Seventh Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a creditor when it received a consumer's FCRA dispute through a CRA.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 126 as the Plaintiffs have not provided reference to any specific articulation or articulations that the allegations are based upon.

127. Defendant was aware of the well-established case law requiring a detailed and investigation into consumer disputes when it followed the ACDV procedures used regarding Plaintiffs' numerous disputes.

**ANSWER:** First lacks knowledge or information sufficient to form a belief as to the allegations made in paragraph 127 as the Plaintiffs have not provided any citations to any case law that the allegations are based upon.

128. The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 168ln. Alternatively, Defendant was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 16810.

**ANSWER:** First denies the allegations made in paragraph 128.

129. Plaintiffs are entitled to recover attorneys' fees pursuant to 15 U.S.C. § 1681n(a), or, alternatively, 15 U.S.C. § 168lo(a).

**ANSWER:** First denies the allegations made in paragraph 129.

DATED: **December 20, 2023**

                                      By: /s/ Steven T. Mann
                                          Steven T. Mann
                                          Caughey, Legner, Freehill, Ehrgott & Mann, LLP
                                          213 South Green Street
                                          Chenoa, IL 61726
                                          T: (815) 945-2611
                                          F: (815) 945-5211
                                          smann@clfem.net

                                          COUNSEL FOR THE DEFENDANT

# CERTIFICATE OF SERVICE

Stephanie R. Tatar
3333 Warrenville Road, Suite 200
Lisle, IL 60532
Stephanie@TheTatarLawFirm.com

Jeffrey B. Sand
WEINER & SAND LLC
800 Battery Avenue SW, Suite 100
Atlanta, Georgia 30339
js@wsjustice.com
aw@wsjustice.com


      **I HEREBY CERTIFY** that on this 20th day of DECEMBER, 2023, a true and correct copy of the above and foregoing **Defendant's Answer to Plaintiff's Amended Complaint** for Declaratory Judgment was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing. In addition, the undersigned sent a copy of such filing to the aforementioned parties by electronic mail.

                                                     */s/ Steven T. Mann*
                                                        Steven T. Mann